**CONFIDENTIAL DRAFT**



# UPS Driver Choice Program (DCP)

## DCP Separation Agreement and Release

**CONFIDENTIAL**

Name: FNAME LNAME

UPS Employee ID Number: EMPID

# DCP SEPARATION AGREEMENT
## FOR THE
## UPS DRIVER CHOICE PROGRAM

In consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged, United Parcel Service, Inc., including its subsidiaries and affiliates, (the "Company"), and I agree as follows:

1. **Consideration**

   In exchange for my execution of this DCP Separation Agreement (the "Agreement"), the Company will make a lump sum severance payment to me in the amount of $xxx,xxx.xx less all applicable withholdings and taxes, and, as described in the UPS **Driver Choice Program Decision Guide** (the "**DCP**") (the "Consideration"). The Consideration will be paid to me after the DCP Separation Date (as defined below). The Company's obligation to pay the Consideration is expressly conditioned on (a) my execution and non-revocation of this Agreement, and (b) my continued employment at UPS until the DCP Separation Date. I acknowledge and agree that the Consideration is in addition to those benefits to which I am otherwise already entitled, and that the Company's promise to pay the Consideration constitutes good, valuable, and sufficient consideration for my promises herein.

2. **Separation from Employment**

   (a) <u>DCP Separation Date</u>: I agree that my employment with the Company will terminate effective on the date to be furnished to me by UPS (the "DCP Separation Date"). I understand and agree that beginning on the DCP Separation Date, I will cease to be employed by the Company and will not be authorized to incur any expenses, liabilities, or obligations on behalf of the Company.

   (b) <u>Payment Through DCP Separation Date</u>: I understand that I will be paid for all outstanding wages earned since my most recent paycheck through and including the DCP Separation Date, less customary and applicable payroll deductions, and that such payments are not contingent upon my signing this Agreement. I confirm and agree that, other than the payments set forth in this subsection, I have received all wages, reimbursements, payments, or other benefits to which I am entitled as a result of my employment with the Company.

   (c) <u>Compensation and Benefit Plans</u>: I will retain my vested benefits under all applicable qualified retirement and non-qualified plans of the Company, and all rights associated with such benefits, as determined under the official terms of those plans. However, I understand that, whether I execute this Agreement or not, I will cease to be eligible to participate under any applicable stock option, bonus, incentive compensation, commission, medical, dental, life insurance, retirement, and other compensation or benefit plans of the Company (or to which the Company contributes on my behalf) as of the DCP Separation Date, except for participation in retiree medical benefits for which I am eligible or any continuation of benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Payments made under this Agreement will not be included in my compensation for purposes of calculating the benefits to which I am entitled under any employee benefit program.

   (d) <u>Re-Employment</u>: I agree that I am not eligible for re-employment with the Company, and I agree not to seek employment with the Company at any time in the future. I agree that any denial of employment by the Company is keeping with the intent of this Agreement and shall not be a legitimate basis for my assertion of a claim of discrimination or retaliation.

3. **Complete Release of Claims**

   (a) <u>In General</u>: In exchange for the Company's promises contained in this Agreement, I agree to irrevocably and unconditionally release any and all Claims I may now have against the Company and other parties as set forth in this Section 3 (the "Release"). Addendum A is attached to this Agreement and incorporated into it by reference for all purposes. By executing this Agreement, I understand it will cover any claims made by my representatives, heirs, executors, administrators, and successors

and assigns.

    (b)    <u>Released Parties</u>: The "Released Parties" are the Company, all related companies, partnerships, or joint ventures, employee benefit plans of the Company and, with respect to each of them, their predecessors and successors; and, with respect to each such entity, all of its past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by, through, under or in concert with any of the persons or entities listed in this subsection.

    (c)    <u>Claims Released</u>: I understand and agree that I am releasing (i.e., giving up) all known and unknown claims, promises, causes of action, or similar rights of any type that I may presently have (the "Claims") against any Released Party arising out of related to my employment by the Company, except as provided in Section 3(f) below. This Agreement includes Addendum A that is incorporated into this Agreement by reference for all purposes. For example, I am releasing all common law contract, tort, or other claims I might have and any and all rights and claims under federal, state, and local employment laws including without limitation under the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Family and Medical Leave Act, the Genetic Information Nondiscrimination Act, the Pregnant Worker Fairness Act, the anti-retaliation provisions of the Fair Labor Standards Act, the Employee Retirement Income Security Act ("ERISA"), the Equal Pay Act, the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the Employee Polygraph Protection Act, the Fair Credit Reporting Act, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Civil Rights Act of 1991; the Immigration Reform and Control Act; the Sarbanes-Oxley Act of 2002; the National Labor Relations Act ("NLRA"), the Uniformed Services Employment and Reemployment Rights Act, any amendments to the foregoing, or any other violations of any state or federal laws, regulations, or ordinances that lawfully may be released; or of any public policy, contract, tort or common law; and/or any basis for recovering costs, fees or other expenses including attorney's fees incurred in these matters. The OWBPA disclosure statement containing the job titles and ages of employees in my decisional unit is posted on the DCP portal at the following URL: https://www.eepoint.com/UPSDCP [eepoint.com]. I acknowledge I reviewed the OWBPA disclosure statement and am aware of the job titles and ages of employees in my decisional unit who received a DCP Separation Agreement offer and who did not receive a DCP Separation Agreement offer.

    (a)    <u>No Pending Claims</u>: I do not have a pending claim of unlawful discrimination, harassment, sexual harassment, abuse, assault or other criminal conduct, retaliation, or other alleged unlawful employment practices or conduct (except whistleblowing claims that do not have to be revealed), whether or not filed in a court or government agency proceeding, in an alternative dispute resolution forum, or through the Company's internal complaint process.

    (b)    <u>Unknown Claims</u>: I understand that I am releasing Claims that I may not know about. That is my knowing and voluntary intent, even though I recognize that someday I might learn that some or all of the facts I currently believe to be true are untrue and even though I might then regret having signed this Release. Nevertheless, I am assuming that risk and I agree that this Agreement shall remain effective in all respects in any such case. I expressly waive all rights I might have under any law that is intended to protect me from waiving unknown claims. I understand the significance of doing so.

    (c)    <u>Claims Not Released</u>: I understand and agree that this Release does not release any claims that the law does not permit me to release. I further understand and agree that I am not releasing any claim that relates to: (i) my right to enforce this Agreement; (ii) my right, if any, to claim government-provided unemployment benefits; (iii) my right to bring a claim or institute a proceeding for worker's compensation benefits; (iv) my right to challenge the validity of my release of claims under the ADEA; (v) the rights I retain pursuant to Section 2(c), above; (vi) any pending grievance I may have under an applicable collective bargaining agreement; or (vii) any rights or claims which may arise or accrue after I sign this Agreement.

    (d)    <u>Ownership of Claims</u>: I have not assigned, transferred or given away any of the Claims I am releasing, nor have I purported to do so. I hereby acknowledge that no child support order, garnishment orders, or other orders requiring me to pay money to any other person are now in effect.

    (e)    <u>Promise Not to Litigate Released Claims</u>: I have not filed or caused to be filed any lawsuit or arbitration with respect to any Claim this released by this Agreement. Except as expressly set forth below regarding my Protected Rights, I promise never to litigate any Claim that I have released by signing this Agreement, whether by means of a lawsuit or arbitration, and whether as a named plaintiff, class member, or otherwise. I will promptly dismiss with prejudice or withdraw from any such action that is currently pending.

    (f)    <u>Protected Rights</u>: Nothing in this Release including but not limited to the separation from employment, complete release of claims, protective covenants, and the miscellaneous provisions (a) limits or affects my right to disclose or discuss sexual harassment

EMPID FNAME LNAME     - 300 -     Initialed_____

or sexual assault disputes; (b) limits or affects my right to challenge the validity of this Release under the ADEA, or the OWBPA; (c) prevents me from communicating with, filing a charge or complaint with, providing documents or information voluntarily or in response to a subpoena or other information request to, or from participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, law enforcement, or any other any federal, state or local agency charged with the enforcement of any laws; or from testifying, providing evidence, or responding to a subpoena or discovery request in court litigation or arbitration; (d) precludes me from exercising my rights under Section 7 of the NLRA or similar state law to engage in protected, concerted activity, including discussing compensation and other terms and conditions of employment, although by signing this Release I am waiving my right to recover any individual relief (including any backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by me or on my behalf by any third party, except for any right I may have to receive a payment or award from a government agency (and not the Company) for information provided to the government agency or where otherwise prohibited.

(g)    <u>Arbitration of Disputes</u>:  The Company and I agree that any dispute arising in connection with, or relating to this Release, to the maximum extent allowed by applicable law, shall be subject to resolution through informal methods and, failing such efforts, through arbitration.  I further agree that any such arbitration shall proceed in accordance with the terms of the Federal Arbitration Act and the rules and procedures of the American Arbitration Association in Atlanta, Georgia and that a single experienced employment arbitrator licensed to practice law in Georgia shall be appointed through the American Arbitration Association's procedures to resolve the dispute.  I also agree that in the event arbitration is necessary, the laws of the State of Georgia and any applicable federal law shall apply.  I recognize and understand that the award of the arbitrator shall be binding and conclusive and that the prevailing party shall have the right to have the award made the judgment of a court of competent jurisdiction in the State of Georgia.  I agree that each party shall pay the fees of his, her or its attorneys, the expenses of his, her or its witnesses, and any other expenses that party incurs in connection with the arbitration, but all costs of the arbitration itself, including the fees of the arbitrator, the cost of any record or transcript of the arbitration, administrative fees, and other fees and costs shall be paid in equal shares by the plaintiff(s) and defendant(s). At my written request and on a showing of substantial hardship, the Company shall advance all or a portion of my share of those arbitration costs to the extent they would exceed the out-of-pocket costs I would have incurred in a lawsuit.  The party losing the arbitration shall reimburse the party who prevailed for all attorneys' fees and expenses the prevailing party paid pursuant to this subsection, except to the extent prohibited by a statute under which the dispute has been brought.

(h)    <u>Non-Admission of Liability</u>: I agree that this Agreement is not an admission of liability, guilt, or wrongdoing by the Released Parties, and I acknowledge that the Released Parties do not believe or admit that they have done anything wrong.

(i)    <u>Return of Company Property</u>: I promise that, no later than the DCP Separation Date, I will return to the Company all files, memoranda, documents, records, credit cards, keys, computers, printers, uniforms, telephones, and other property and equipment of the Company or its affiliates in my possession, custody, or control.

(j)    <u>This Agreement to be Kept Confidential</u>:  I agree not to disclose the terms, amount, or existence of this Agreement to anyone other than a member of my immediate family, attorney, or other professional advisor and, even as to such a person, only if the person agrees to honor this confidentiality requirement.  Such a person's violation of this confidentiality requirement will be treated as a violation of this Agreement by me. This subsection does not prohibit my disclosure of the terms, amount, or existence of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise legally permitted.  I acknowledge that the Released Parties would be irreparably harmed if this subsection is violated.

**4.    Review, Acceptance, and Revocation**

I acknowledge and agree to the following:

(a)    Before signing this Agreement, I was given at least 45 calendar days to consider this Agreement, and if I sign the Agreement before the end of the 45-day period, it will be my voluntary decision to do so because I have decided that I do not need any additional time to decide whether to sign the Agreement;

(b)    I took advantage of the time I was provided, to the extent I desired, to consider this Agreement before signing it;

(c)    I also received at the beginning of the 45-day period information about the group of individuals covered by the DCP, factors to be eligible for the DCP, and the time limits applicable to the DCP, and I also received data regarding the ages and job titles of all individuals who are eligible for the DCP and the ages of all individuals in the same job classification or organizational unit as me who are not eligible for the DCP, posted on the DCP portal, at the following URL: https://www.eepoint.com/UPSDCP [eepoint.com];

(d) Before signing this Agreement, I carefully read the Agreement and each of its provisions, and I fully understand what the Agreement and each of its provisions mean;

(e) I am entering into this Agreement knowingly and voluntarily;

(f) I understand that this Agreement requires me to release any and all claims of age discrimination under the ADEA, as well as all claims under state and federal law;

(g) I am receiving valuable consideration in exchange for my execution of this Agreement and the Supplemental Release that I would not otherwise be entitled to receive;

(h) The Company hereby advises me of my right to consult with an attorney (at my own expense) before signing this Agreement within at least five (5) business days from receipt of this Agreement. I understand that I can sign this Agreement prior to the end of such time period as long as my decision to accept such shortening of time is knowing and voluntary and is not induced through fraud, misrepresentation, or a threat to withdraw or alter the offer prior to the expiration of the reasonable time period, or by providing different terms to employees who sign such an agreement prior to the expiration of such time period.

(i) I understand that if I do not execute and submit this Agreement within 7 days after my DCP Separation Date, it will become null and void and I will not be entitled to receive the Consideration. After reading the DCP Separation Agreement, the form must be completed and electronically signed on the DCP Portal. To complete my form on the DCP Portal, I understand I must 1) consent to use an electronic signature by following the instructions on the DCP Portal and 2) electronically sign the DCP Separation Agreement.

(j) I understand that I may revoke my acceptance of this Agreement within seven (7) calendar days after I sign the Agreement, in which case I will not be entitled to receive the Consideration or any other benefit under the DCP. To revoke, I must complete and return the DCP Revocation Form no later than 5 p.m. ET on the seventh calendar day from the date I signed this Agreement.

(k) If my employment ends before the DCP Separation Date selected by UPS (except for reason of death or disability), I will forfeit any benefits provided under the DCP. If UPS and I mutually agree on a different DCP Separation Date than the one originally established, I will not forfeit benefits provided under the DCP.

(l) The UPS Executive Leadership Team, or its designee, shall have final authority to interpret and construe the DCP Plan and this Agreement and to make any and all determinations under them, and its decision shall be binding and conclusive upon the Participant and their legal representative in respect of any questions arising under the DCP Plan or this Agreement. I acknowledge that I have received a copy of the DCP Plan, and have had an opportunity to review the DCP Plan and agree to be bound by all the terms and provisions of the DCP Plan.

(m) To the extent I may have the right to have a union steward or another hourly paid employee witness my voluntary resignation of employment with the Company through this voluntary severance program, I am waiving that right by signing below.

5. **Miscellaneous**

(a) <u>Entire Agreement</u>: This Agreement sets forth the entire agreement between the Released Parties and me pertaining to the subject matter of this Agreement. Subsequent to the revocation period, this Agreement may not be modified or canceled in any manner except by a writing signed by both me and an authorized Company official. I acknowledge that the Company has made no representations or promises to me (such as what might happen with respect to my former position) other than those in this Agreement.

(b) <u>Successors and Assigns</u>: This Agreement binds my heirs, administrators, representatives, and executors, and will inure to the benefit of the Released Parties and their heirs, administrators, representatives, executors, successors, and assigns. I understand agree that the Company may assign this Agreement as required by the needs of the business. I further understand and agree that this Agreement may not be assigned by me to any other person or entity.

(c) <u>Interpretation</u>: This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against me or any Released Party. Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement.

(d)     Governing Law and Jurisdiction: I agree that, without regard to conflict of laws principles, the substantive laws of the state of Georgia govern this Agreement in all respects. I further agree that the exclusive forum for any action to enforce this Agreement, as well as any action relating to or arising out of this Agreement, shall be the state or federal courts of the State of Georgia. I specifically consent to personal jurisdiction and venue in such courts, even if I do not reside in Georgia at the time of any dispute arising out of or involving this Agreement. With respect to any such court action, I hereby (i) irrevocably submit to the personal jurisdiction of such courts; (ii) consent to service of process; (iii) consent to venue; and (iv) waive any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction, service of process, or venue. I further agree that the state and federal courts of the State of Georgia are convenient forums for any dispute that may arise herefrom and that I shall not raise as a defense that such courts are not convenient forums. If I primarily resided and worked for the Company in California immediately prior to the end of my Company employment, or following the termination of my Company employment, I reside and work in California, I agree that (x) California law shall apply to this Agreement, and (y) the federal or state courts of California shall have exclusive jurisdiction over any dispute relating to this Agreement and I specifically consent to personal jurisdiction in such courts even if I do not reside in California at the time of any dispute arising out of or involving this Agreement. If I primarily resided and worked for the Company in Minnesota immediately prior to the end of my Company employment, I agree and acknowledge that my consent to jurisdiction and venue in Georgia is voluntary and that I was not required to accept Georgia jurisdiction and venue as a condition of my employment.

(e)     Waiver: I acknowledge that any waiver by the Company of any breach of this Agreement by me shall not be effective unless confirmed in writing, and that no such waiver shall operate or be construed as a waiver of the same breach or another breach on a subsequent occasion.

(f)     Severability: With the exception of the Release contained in Section 3 of this Agreement, the provisions of this Agreement are severable and if any part of it is found to be unenforceable the other paragraphs shall remain fully and validly enforceable. If the Release contained in Section 3 of this Agreement is found to be unenforceable, this Agreement shall be null and void and you will be required to return to the Company all Consideration already paid to you.

(g)     Execution: It is not necessary that the Company sign this Agreement for it to become binding on both me and the Company.

> READ THIS AGREEMENT CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. THIS AGREEMENT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS AND ITS ARBITRATION-OF-DISPUTES REQUIREMENT WAIVES YOUR RIGHT TO A JURY TRIAL. IF YOU WISH, YOU SHOULD TAKE ADVANTAGE OF THE CONSIDERATION PERIOD AFFORDED BY SECTION 4 AND CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT.

_____          _____
Signature                                Date

Name: FNAME MNAME LNAME

UPS Employee ID Number: EEID

If you accept this agreement, please consent and sign electronically via the DCP Portal within 7 days after your DCP Separation Date. Please download and retain a copy of this form for your records.

**ADDENDUM A**

The following is attached to this Separation Agreement and General Release and incorporated into it by reference for all purposes.

**ALABAMA.** If during employment with the Company, Employee lived or worked in Alabama, the following language is added to the end of Section 5:

The confidentiality obligation in this Agreement does not prevent Employee from exercising the right to (i) communicate with a law enforcement officer acting within the line and scope of the officer's law enforcement duties that a violation of the law has occurred or is occurring; (ii) communicate with a government regulator acting within the line and scope of the regulator's regulatory duties that a violation of the law has occurred or is occurring; (iii) respond to a lawfully served judicial, grand jury, or other lawful subpoena; (iv) testify in a judicial or administrative proceeding in response to a lawfully served subpoena or an order of a court of competent jurisdiction; (v) confer with the obligated party's attorney for the purpose of obtaining legal advice or representation; (vi) respond to lawful discovery in a judicial or administrative action; provided the disparaging statement is either ordered by a court of competent jurisdiction or made in compliance with a protective order entered by the same court; (vii) prosecute or defend a civil action between or among parties to a covered contract; provided the party making the disparaging statement attempts to and, if permitted by law, does file the disparaging statement and any related pleading under seal or in compliance with a protective order entered by a court of competent jurisdiction in the civil action; or (viii) exercise federally protected statutory rights, including, but not limited to, the exercise of rights under the National Labor Relations Act or the Civil Rights Act of 1964, as amended.

**CALIFORNIA.** If during employment with the Company, Employee lived or worked in California, the following statutes are added to the list of statutes in the claims released section, Section 3(c):

Employee is releasing all rights under California Family Rights Act – Cal. Gov't Code § 12945.2; California Fair Employment and Housing Act – Cal. Gov't Code § 12900 et seq.; California Unruh Civil Rights Act – Cal. Civ. Code § 51 et seq.; statutory provisions regarding the confidentiality of AIDS information – Cal. Health & Safety Code § 120775 et seq.; California Confidentiality of Medical Information Act – Cal. Civ. Code § 56 et seq.; California Parental Leave Law – Cal. Lab. Code § 230.7 et seq.; California Apprenticeship Program Bias Law – Cal. Lab. Code § 3070 et seq.; California Equal Pay Law – Cal. Lab. Code § 1197.5; California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; California Military Personnel Bias Law – Cal. Mil. & Vet. Code § 394; statutory provision regarding California Family and Medical Leave – Cal. Lab. Code § 233; statutory provisions regarding California Electronic Monitoring of Employees – Cal. Lab. Code § 435; California Obligations of Investigative Consumer Reporting Agencies Law – Cal. Civ. Code § 1786.10 et seq.; California Political Activities of Employees Law – Cal. Lab. Code § 1101 et seq.; California Domestic Violence Victim Employment Leave Law – Cal. Lab. Code § 230.1; California Court Leave Law – Cal. Lab. Code § 230;, California Consumer Privacy Act, and any other violations of any California laws, regulations, or ordinances that lawfully may be released; or of any public policy, contract, tort or common law; and/or any basis for recovering costs, fees or other expenses including attorney's fees incurred in these matters.

Employee is releasing all rights under Section 1542 of the California Civil Code, which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Employee also is not waiving the right to indemnity for necessary expenditures or losses (e.g., reimbursement of business expenses) incurred on behalf of the Company as provided in Section 2802 of the California Labor Code.

The following is added to the protected rights section, Section 3(j):

Nothing in this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions prevents Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that Employee has reason to believe is unlawful or waives Employee's right to testify in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged sexual harassment on the part of the Company, or on the part of the agents or employees of the Company, when Employee has been required or requested to attend such a proceeding pursuant to a court order, subpoena, or written request from an administrative agency or the legislature.

The following is added as Section 3(l):

 

Medicare/Medi-Cal/Medicaid Declaration: I declare under the pains and penalties of perjury that: 1) I am not currently entitled to Medicare, Medi-Cal, and/or Medicaid; and 2) none of the treatment I received for the injury or injuries released in this agreement were or will be submitted to, or paid for by, Medicare, Medi-Cal, or Medicaid. I understand that the Company is relying on my representation for purposes of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act ("MMSEA") of 2007 (codified as 42 U.S.C. §1395y(b)(8)), to the extent it applies to the Company and that any portion of the settlement amount includes the resolution of medical claims. I also agree to indemnify and hold harmless the Released Parties from any and all claims, demands, liens, subrogated interests and/or causes of action of any nature or character that have been or may in the future be asserted by Medi-Cal, and/or Medicare and/or Medicaid and/or persons or entities acting on behalf of Medi-Cal, and/or Medicare and/or Medicaid concerning medical, hospital, or other expenses arising out of alleged injuries claims, or concerning any claim based on inaccurate or inadequate information provided by me concerning my status as a Medi-Cal, Medicare, or Medicaid beneficiary. I acknowledge and agree that the Released Parties are relying upon my representations herein and that any misrepresentations by me concerning such matters are and shall be deemed a material breach of this Agreement.

The following is added to the Miscellaneous section as Section 6(h):

I further certify and agree that I have not filed and will not at any time in the future file any notice with the California Labor & Workforce Development Agency pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA") or any PAGA action against the Company or any Released Parties on behalf of myself, the State of California, or any allegedly "aggrieved employees" based on alleged violations that occurred or may be alleged to have occurred at any time through and including the date I execute this Agreement. I expressly waive and relinquish any right or authority I may otherwise have had to pursue, participate in, or recover from any claim for civil penalties against the Company or any Released Parties as an allegedly "aggrieved employee" under PAGA.

The following is added to the Miscellaneous section as Section 6(i):

I have received reimbursement from the Company for any necessary expenditures or losses, including business expenses, that I incurred on behalf of the Company. I further agree that I am not an "aggrieved employee" under sections 2699, 2699.3, and 2699.5 of the California Labor Code.

**COLORADO.** If during Employee's employment with the Company, Employee lived or worked in Colorado, the following is added to the protected rights section 3(j).

- Regardless of whether or not Employee signs this Agreement, nothing in any Company agreement, policy, or practice, including this Agreement limits Employee's ability to disclose or discuss, either orally or in writing, any alleged discriminatory or unfair employment practice;
- The confidentiality obligation in the Agreement and any other reference that could be considered a nondisclosure provision applies equally to all parties to the release;
- Nothing in the Agreement including any nondisclosure provision restrains Employee from disclosing the underlying facts of any alleged discriminatory or unfair employment practice:
    - including disclosing the existence and terms of a settlement agreement, to Employee's immediate family members, religious advisor, medical or mental health provider, mental or behavioral health therapeutic support group, legal counsel, financial advisor, or tax preparer;
    - to any local, state, or federal government agency for any reason including disclosing the existence and terms of a settlement agreement, without first notifying the employer;
    - in response to legal process, such as a subpoena to testify at a deposition or in court, including disclosing the existence and terms of a settlement agreement, without first notifying the employer; and
    - for all other purposes required by law;
- The disclosure of underlying facts of any alleged discriminatory or unfair employment practice does not constitute disparagement;
- If the employer disparages Employee to a third-party, the employer may not seek to enforce the nondisparagement or nondisclosure provisions of the Agreement or seek damages against Employee or any other party to the Agreement for violating those provisions, but all other remaining terms of the Agreement remain enforceable; and
- The parties to this release sign below attesting to compliance with this Colo. Rev. Stat. §24-34-407(1).

_____        _____
Employee                                                            For the Employer

**HAWAII.** If during employment with the Company, Employee lived or worked in Hawaii, the following is added to the protected rights section, Section 3(j):

Regardless of whether or not Employee signs this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions shall be construed to prevent disclosing or discussing sexual harassment or sexual assault occurring in the workplace, at work-related events, between employees, or between an employer and an employee.

**ILLINOIS.** If during employment with the Company, Employee lived or worked in Illinois, the following statutes are added to the list of statutes in the claims released section, Section 3(c): the Illinois Human Rights Act.

The following is added to the protected rights section, Section 3(j):

Regardless of whether or not Employee signs this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions is intended to or will be used in any way to limit Employee's right to make truthful statements or disclosures regarding unlawful employment practices or precludes Employee from testifying in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged unlawful employment practices regarding the Company, its agents, or employees, when Employee has been required or requested to do so pursuant to a court order, subpoena, or written request from an administrative agency or the legislature.

**MASSACHUSETTS.** If during employment with the Company, Employee lived or worked in Massachusetts, the following statutes are added to the list of statutes in the claims released section, Section 3(c): the Massachusetts Fair Employment Practices Act, the Massachusetts Payment of Wages Law, the Massachusetts Minimum Fair Wages Law, the Massachusetts Civil Rights Act, the Massachusetts Equal Rights Act, the Massachusetts Equal Pay Act, the Massachusetts Labor and Industries Act, the Massachusetts Privacy Act, the Massachusetts Independent Contractor statute, the Massachusetts Earned Sick Time Law, and the anti-discrimination provisions of the Massachusetts Paid Family and Medical Leave Act.

**MINNESOTA.** If during employment with the Company, Employee lived or worked in Minnesota, Employee has fifteen (15) days to revoke the agreement instead of seven (7) days as specified in section 4(j). In addition, the Agreement shall not become effective until the 15-day revocation period expires, provided Employee does not revoke.

**MONTANA.** If during employment with the Company, Employee lived or worked in Montana, the following language is added to the end of the claims released section, Section 3(c):

Employee is releasing all rights under Montana Code Annotated Section 28-1-1602, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN THE CREDITOR'S FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY THE CREDITOR, MUST HAVE MATERIALLY AFFECTED THE CREDITOR'S SETTLEMENT WITH THE DEBTOR.

Employee understands that Employee is referred to in this statute as the "creditor" and the Company is referred to as the "debtor."

**NEVADA.** If during employment with the Company, Employee lived or worked in Nevada, the following language is added to the protected rights section, Section 3(j):

Regardless of whether or not Employee signs this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions precludes Employee from testifying in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged unlawful employment practices regarding the Company, its agents, or employees, when Employee has been required or requested to do so pursuant to a court order, subpoena, or written request from an administrative agency or the legislature.

**NEW JERSEY.** If during employment with the Company, Employee lived or worked in New Jersey, the following statutes are added to the list of statutes in the claims released section, Section 3(c): the New Jersey Conscientious Employee Protection Act, the New Jersey Law Against Discrimination, the New Jersey Family Leave Act, the New Jersey Civil Rights Act, the New Jersey Wage and Hour Law, the New Jersey Family Leave Act, the Millville Dallas Airmotive Plant Job Loss Notification Act and the Diane B. Allen Equal Pay Act.

In addition, the following is added to the protected rights section, Section 3(j):

Regardless of whether or not Employee signs this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions shall have the purpose or effect of requiring Employee to conceal the details relating to any claim of discrimination, harassment, or retaliation, provided that Employee does not reveal proprietary information consisting of non-public trade secrets, business plans, and customer information.

**NEW YORK.** If during employment with the Company, Employee lived or worked in New York, the following statutes are added to the list of statutes in the claims released section, Section 3(c): the New York Executive Law, the New York Human Rights Law, New York Labor Law, the New York City Human Rights Law, the New York State Paid Family Leave Law.

In addition, the following is added to the protected rights section, Section 3(i):

Regardless of whether or not Employee signs this Agreement, nothing in any Company agreement, policy, or practice, including this Agreement requires the payment of liquidated damages or forfeiture of all or part of the consideration for the Agreement for violations of a nondisclosure or nondisparagement clause; or requires any affirmative statement that the complainant was not in fact subject to unlawful discrimination, including discriminatory harassment, or retaliation.

**NORTH DAKOTA.** If during employment with the Company, Employee lived or worked in North Dakota, the following language is added to the claims released section, Section 3(c):

Employee expressly waives any and all rights under any state or local statute, executive order, regulation, common law and/or public policy relating to unknown claims, including but not limited to North Dakota Century Code § 9-13-02.

**OREGON.** If during employment with the Company, Employee lived or worked in Oregon, the following is added to the protected rights section, Section 3(j):

Nothing in this Agreement, including but not limited to, the complete release, promises, and miscellaneous provisions shall have the purpose or effect of preventing Employee from disclosing factual information or discussing conduct that constitutes unlawful discrimination; harassment; sexual harassment, abuse, assault, or other criminal conduct; or retaliation; or prevents Employee from disclosing the amount or fact of any settlement. Employee acknowledges receiving a copy of the Company's policy containing procedures and practices for the reduction and prevention of discrimination, including sexual assault.

**SOUTH DAKOTA.** If during employment with the Company, Employee lived or worked in South Dakota, the following language is added to the claims released section, Section 3(c):

Employee expressly waives any and all rights under any state or local statute, executive order, regulation, common law and/or public policy relating to unknown claims, including but not limited to South Dakota Codified Laws Section 20-7-11.

**WASHINGTON.** If during employment with the Company, Employee lived or worked in the State of Washington, the following is added to the protected rights section, Section 3(j):

Regardless of whether or not Employee signs this Agreement, including but not limited to, the acknowledgments, release of claims, proprietary information, return of property, confidentiality, cooperation, and non-disparagement provisions prevents Employee from discussing or disclosing conduct, or the existence of a settlement involving conduct, that Employee reasonably believed to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as illegal under state, federal, or common law, or that is recognized as against a clear mandate of public policy, where the conduct occurred at the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises; provided, however, that Employee remains subject to the obligation to keep confidential the amount paid in settlement of any claim.

**WEST VIRGINIA.** If during employment with the Company, Employee lived or worked in West Virginia, the following language is added to the agreement in the indicated places:

"The West Virginia Human Rights Act" is added to the list of statutes in the claims released section, and the following as added to the end of Section 3(c): By executing this Agreement, I knowingly and voluntarily waive any and all claims under the West Virginia Human Rights Act (WVHRA"), as well as the other claims addressed throughout this Agreement. I waive any WVHRA rights and claims except that I do not waive any claims under the WVHRA that may arise after the date that

I sign this agreement and I have been given additional consideration, over and above that to which I was otherwise entitled in exchange for my waiver of WVHRA rights and claims.

    A reference to "The toll-free number for the West Virginia Bar Association is 1-866-989-8227" is added to the review and revocation provision, Section 4(h).

    "This confidentiality obligation does not apply to communications between Employee and (i) the West Virginia Human Rights Commission and (ii) similarly situated employees" is added to the end of the protected rights section, Section 3(j).

**[REMAINDER OF THIS PAGE LEFT BLANK]**