

**Daniel P. Bordoni**
**President, Global Labor Relations &**
**Deputy General Counsel, Labor**
**55 Glenlake Pkwy, NE**
**Atlanta, GA 30328-3474**

January 30, 2026

Sean M. O'Brien
General President
International Brotherhood of Teamsters
25 Louisiana Avenue, NW
Washington D.C. 20001

**Re: Request for Information – Driver Choice Program (DCP)**

Dear General President O'Brien:

This responds to your January 27, 2026 letter regarding UPS's proposed Driver Choice Program ("DCP") and the Union's position that the DCP would violate obligations under the National Master Agreement ("NMA"). Your letter requests specific information related to that position, as well as a meeting to discuss the same.

As set forth below, the proposed DCP would not violate the NMA. The NMA does not address incentive programs generally, let alone incentive-based voluntary separation programs like the DCP. Although your letter does not identify specific NMA provisions, grievances filed concerning the Driver Voluntary Separation Program in 2025 ("DVSP") alleged violations of Article 6, Section 1 of the NMA. Article 6, Section 1, however, never has been interpreted to prohibit all individual agreements between UPS and its employees. Rather, it only prohibits the Company from entering or attempting to "enter into any agreement or contract with its employees . . . which in any way conflicts with the provisions of this Agreement." In fact, arbitrators have interpreted Article 6, Section 1 as expressly allowing agreements with employees that do not specifically conflict with the provisions of the collective bargaining agreement. Accordingly, UPS has entered into agreements with individual employees in the past consistent with Article 6, Section 1 and without violating the NMA. The proposed DCP – and the DVSP before it – are no different.

While the Company disagrees with the Union's position regarding NMA violations, we provide the following information in response to your request:

**DCP Budget/Funding & Additional Programs**

Funding for the DCP will be determined based on the number of drivers who volunteer for the program. There currently is no specific amount "budgeted/funded" for the proposed DCP. Separately, UPS does not currently plan to offer another voluntary separation program for drivers.

**UPS Workforce Transition Governance Committee**

As set forth in the DCP Decision Guide and Summary Plan Description ("SPD") provided on January 9, 2026, the UPS Workforce Transition Governance Committee ("WTGC") would interpret the terms and conditions of the DCP. Specifically, it would decide all matters arising in the administration and operation of the DCP. The WTGC would not, however, make initial decisions approving or denying DCP applications. Instead, applicants meeting the eligibility criteria would be approved in seniority order based on the local staffing needs of the business. To the extent there are appeals, revocations, exit date changes, and related administrative matters, those matters would be referred to the WTGC for consideration. In making an appeal determination the WTGC would in effect approve or deny an application, but only in accordance with the terms of the SPD and eligibility criteria. I have attached the SPD and DCP Eligibility Schedule again for your reference. The WTGC has no authority to modify the seniority provisions of the applicable Supplement, Rider or Addendum. The WTGC also has no decision-making authority relating to DCP funding.

**Determination of DCP Severance Amount**

The DCP severance amount was determined after considering current driver wages and proposed at a level that is more than a year of wages for the average driver. The goal was to make the DCP meaningful and attractive to eligible employees at all seniority levels. As I communicated on January 16, 2026, the correct amount is $150,000 rather than the $125,000 listed in the original materials shared.

**Number Expected to Participate in DCP**

We do not currently have an estimate as to the number of drivers expected to participate in the DCP. Although we may cap participation in certain locations, no aggregate or location-specific caps on program participation have been established at this time.

**Determination of Election Window**

The election window of February 13 to March 12, 2026 is intended to provide employees almost a full month to consider whether to participate in the DCP. This amount of time was informed in part by our experience with the DVSP, where the original two week election window was extended to provide employees sufficient time to make their decision. The opening of the election window on February 13, 2026 was tied to the planned February 11, 2026 date for mailing DCP materials to employees. We expect that most eligible employees would receive those materials by February 13.

**Amazon Glide Down**

As recently announced, we reduced Amazon volume by approximately 1 million pieces per day in 2025 and anticipate a similar reduction in 2026. This reduction is expected to impact substantially all domestic UPS centers and routes in some manner.

**UPS Ground Saver**

As you know, the Company is utilizing the United States Postal Service to deliver some of its Ground Saver (formerly SurePost) volume pursuant to the terms of Article 26, Section 4 of the NMA. The references to "some" final mile deliveries reflects the limits in Article 26, Section 4 of the NMA on how much Ground Saver volume may be tendered to the USPS for final mile delivery. The Ground Saver transition to the USPS is expected to impact substantially all domestic UPS centers and routes in some manner.

**UPS Building Closures**

A total of 22 facilities with bargaining unit employees have been identified for closure in 2026.  The applicable Local Unions have been notified of these closures and informed of the anticipated impacts, in accordance with Article 38 the NMA.  At this time, no additional closures are planned.  Attached is a list of the 22 facilities.

**2026 Layoffs**

Over the course of 2026, we expect to be overstaffed in all classifications.  This could impact substantially all centers.  We anticipate managing this overstaffing through attrition and layoffs.

The DCP provides eligible drivers the opportunity to leave the Company with a significant monetary benefit.  By offering this program, the number of layoffs for remaining drivers could be reduced.

**Acceptance of DCP Applications Based on "Local Needs of the Business"**

The reference in the DCP materials to applications being "considered according to the local needs of the business" refers to the caps that may be imposed on the number of applications accepted at a particular location to support the Company's ability to meet local service and operational requirements.  If any caps are imposed, applications will be granted in full-time seniority order.

*   *   *

I am available to meet at your convenience.  In the event the Union still believes the DCP would violate the NMA, those alleged violations would be handled through the NMA grievance procedure.  The Company will timely respond to any such grievance up to and including arbitration, just as it has with respect to the DVSP.

As communicated previously, the current plan is to mail DCP materials to employees beginning on February 11, 2026.  Although you have indicated previously that you have no interest in discussing the program, we continue to believe it would be a significant benefit to employees who choose to volunteer – whether they want to retire or leave the Company for other opportunities – as well as for those UPSers who remain.


Sincerely,

Daniel P. Bordoni