

**Daniel P. Bordoni**
**President, Global Labor Relations &**
**Deputy General Counsel, Labor**
**55 Glenlake Pkwy, NE**
**Atlanta, GA 30328-3474**

February 6, 2026

Sean M. O'Brien
General President
International Brotherhood of Teamsters
25 Louisiana Avenue, NW
Washington D.C. 20001

**Re: Request for Information – Driver Choice Program (DCP)**

Dear General President O'Brien:

Your February 3, 2026, letter reiterates your request for information based on the Union's position that the proposed Driver Choice Program ("DCP") violates the "National Master Agreement or its Supplements or Riders" ("NMA").  My letter of January 30 explained why this is not the case.  I nonetheless also provided responses to a number of your requests.

With respect to the specific information provided, note that Requests 20 and 21 were addressed in my January 30 letter.  Specifically, I explained that we expected substantially all package centers and routes to be impacted in some manner by both the Amazon glide down and the Ground Saver transition to the USPS.  Similarly, I responded to Request 37 by explaining that attrition was a means of managing overstaffing other than layoffs.  I also explained that the DCP could reduce the number of layoffs needed in the future.

Your letter sought clarifications of the response to Request 16, relating to the DCP election window, and Request 51, regarding caps that may be imposed on the number of DCP applications accepted.  With respect to the February 11, 2026, mail date for the DCP materials, we selected a Wednesday so that most employees would receive the materials on a Friday and then have the weekend to review them.  February 11 was selected because it provided the Union with a reasonable amount of time to review materials concerning the proposed DCP and an opportunity to respond.  Regarding the potential maximum number of DCP applications that may be accepted at each facility, UPS has not yet finalized any specific facility-based caps.  As explained in my prior response, caps on the number of applications accepted at each facility (if any) will be based on the Company's ability to meet ongoing local service and operational requirements at the time applications are being reviewed.  In connection with the DVSP in 2025, for example, we ended up not utilizing caps at any location given the number of applications received.  As you know, just over 3,000 drivers participated in the DVSP.  We are, however, happy to keep you updated if/when cap levels are established for the DCP.

The remaining information you continue to seek does not appear relevant to whether the DCP violates the NMA. For example, the Union has requested UPS Board of Director's meeting minutes, the identity of individuals who made certain decisions regarding the DCP and other operational changes, and information and documentation related to consultations with third-party vendors. The Union is not entitled to this information without some explanation of relevance. Many of your requests also raise significant confidentiality concerns for which we will need to utilize a confidentiality agreement, as we have in the past. Other requests are overly broad and cannot be answered without a better understanding of exactly what the Union is seeking and why. We would be happy to review any Union explanation of relevance, whether in writing or in a future meeting.

Finally, your letter requests that the Company delay the planned February 11, 2026, mailing of DCP materials to employees. I provided you the information related to the DCP in early January. Since that time, the Union consistently has taken the position that the proposed DCP violates the NMA. The Union has taken the same position with respect to the DVSP. This is an issue to be resolved in the grievance process. It is not a reason to delay the roll-out of the DCP.

Sincerely,

Daniel P. Bordoni