**From:** Kelly Hemple <khemple@teamster.org>
**Sent:** Friday, February 6, 2026 4:26 PM
**To:** dbordoni@ups.com <dbordoni@ups.com>
**Cc:** David Suetholz <DSuetholz@teamster.org>; Timika Long <TLong@teamster.org>; Alexis Charnock <ACharnock@teamster.org>
**Subject:** 2/6/26 DCP Grievance

Hi Dan-please see the attached.

Thank you,

Kelly A. Hemple, Esq.
Executive Assistant/Special Counsel to the General President
Sean M. O'Brien
International Brotherhood of Teamsters
25 Louisiana Ave. NW
Washington, DC 20001
(o) 202-624-6800

# INTERNATIONAL BROTHERHOOD OF TEAMSTERS



**SEAN M. O'BRIEN**
General President

25 Louisiana Avenue, NW
Washington, DC 20001

**FRED E. ZUCKERMAN**
General Secretary-Treasurer

202-624-6800
www.teamster.org

February 6, 2026

<u>VIA EMAIL:</u>  dbordoni@ups.com

Daniel P. Bordoni
Global President, Labor Relations & Deputy General Counsel, Labor
United Parcel Service, Inc.
55 Glenlake Pkwy NE
Atlanta, GA 30328

    Re:  Grievance on behalf of all affected employees
        Driver Choice Program

Dear Mr. Bordoni:

  On behalf of the Teamsters UPS National Negotiating Committee, this letter shall serve as a grievance filed on behalf of all affected members of all Teamsters Local Unions.

<u>Facts</u>

  On or about January 9, 2026, UPS, through its President, Global Labor Relations and Deputy General Counsel, Labor, Daniel P. Bordoni, informed IBT General President Sean O'Brien that it intended to offer bargaining unit employees the opportunity to participate in the Driver Choice Program ("DCP"), whereby eligible employees would receive a lump sum payment in exchange for resigning their employment, waiving all legal claims against UPS, and agreeing not to seek employment with UPS at any time in the future. UPS informed the Union that it intended to mail DCP materials to employees beginning on February 11, 2026, and that the window for employees to elect to participate in the DCP is from February 13 to March 12, 2026. UPS developed and created the DCP without notice to, and bargaining with, the Union. The Union was informed of the existence of the DCP after all material terms of the DCP were finalized by UPS, and the DCP was presented to the Union as a *fait accompli*.

  In order to participate in the DCP, UPS employees must execute a "DCP Separation Agreement and Release" (the "Release"). The Release contains a provision titled "Re-Employment" which provides that: "I agree that I am not eligible for re-employment with the Company, and I agree not to seek employment with the Company at any time in the future. I agree that any denial of employment by the Company is keeping with the intent of this Agreement and shall not be a legitimate basis for my assertion of a claim of discrimination or retaliation." The Release also contains a provision which provides: "To the extent I may have the right to have a union steward or another hourly paid employee witness my voluntary resignation of employment with the Company through this voluntary severance

Daniel P. Bordoni
February 6, 2026
Page 2 of 3

program, I am waiving that right by signing below." The Release further provides that it is irrevocable unless it is revoked in writing within seven (7) calendar days after execution.

On or around January 27, 2026, General President O'Brien sent Mr. Bordoni a "Request for Information" related to the DCP. In the January 27 letter, General President O'Brien wrote, in part, that, "Having just learned about the DCP, the Union's initial position is that this proposed program violates obligations under the National Master Agreement and may not be unilaterally implemented without the Union's agreement." The Request for Information included fifty-five (54) separate requests for information and documents so that the Union could "more fully understand what is being proposed."

On or around January 30, 2026, Mr. Bordoni sent General President O'Brien a three-page response to the January 27 Request for Information. Mr. Bordoni provided General President O'Brien with limited additional information about the DCP, attached the same DCP materials previously provided, but did not provide *any* of the documents requested by General President O'Brien and did not provide responses to the vast majority of the 54 enumerated requests for information. Mr. Bordoni wrote, in part, that "As communicated previously, the current plan is to mail DCP materials to employees beginning on February 11, 2026."

On or around February 3, 2026, General President O'Brien sent Mr. Bordoni a letter identifying the specific requests that UPS did not address/answer in its January 30 response. General President O'Brien also submitted several follow-up requests for information related to the information that was provided in the January 30 letter. In the February 3 letter, General President O'Brien reiterated that the Union "need[s] the requested information to make an informed decision whether the proposed 'driver choice program' violates the National Master Agreement or its Supplements and Riders." General President O'Brien also wrote that: "Once I have received and had an opportunity to review all of the requested information, I will be reaching out to set up a meeting to discuss further. The Union continues to maintain our position that the DCP likely violates the NMA as well provisions of various regional supplemental agreements and, therefore cannot be implemented without the Union's approval. **Accordingly, please confirm that UPS will not directly bargain with our members or unilaterally implement the DCP unless and until the Union has the opportunity to review the requested information and meet to discuss the DCP**" (Emphasis in original).

On or around February 6, 2026, Mr. Bordoni sent General President O'Brien a two-page response to the February 3 letter in which Mr. Bordoni provided some clarification to the Union's follow-up requests, but again failed to provide the vast majority of the requested items asserting for the first time that "[t]he remaining information you continue to seek does not appear relevant to whether the DCP violates the NMA," and that many requests "raise significant confidentiality concerns for which we will need to utilize a confidentiality agreement, as we have in the past." The February 6 letter concludes by communicating UPS' intent to proceed with its implementation of the DCP program according to the same timeline, despite not having provided the Union's requested information or meeting with the Union.

Daniel P. Bordoni
February 6, 2026
Page 3 of 3

## Contract Provisions Violated

The Union asserts that implementation of the DCP violates Articles 1, 3, 4, 6, 22, and 26 of the NMA and the layoff/reduction-in-force procedures in the local supplemental agreements/riders. Specifically, the DCP violates UPS' obligations to:

1) Preserve and protect job opportunities for bargaining unit employees (Article 1);

2) Recognize and respect the Union's status as "exclusive representatives of all employees of the Employer in covered classifications" (Article 3, Section 1);

3) Maintain a sufficient workforce to staff its operations with bargaining unit employees. (Article 3, Section 7(a));

4) Allow a Union steward to be present when requested by the Union whenever UPS meets with an employee concerning grievances (Article 4);

5) Create at least seventy-five hundred (7500) new full-time jobs during the last three years of the NMA and to not reduce the number of jobs created under Article 22, Section 3 of the 1997-2002, the 2002-2008, the 2013-2018 and the 2018-2023 Agreements (Article 22, Section 3);

6) Use the joint UPS/IBT Competition Committee to discuss and evaluate proposals (such as the DCP) which could enable UPS to more effectively compete with other companies, implement new services and products, or change existing services. (Article 26, Section 2);

7) Follow the layoff/reduction-in-force procedures set forth in the local supplemental agreements/riders when reducing the number of bargaining unit employees; and

8) Any other articles or provisions that may apply.

## Requested Remedy

The Union requests that UPS be required to:

1) Cease and desist from implementing the DCP or offering similar programs in the future; and

2) Make any affected bargaining unit employees whole.

Should you have any questions or wish to discuss anything further, please contact me any time.

Sincerely,

*[signature]*

Sean M. O'Brien
General President