IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS and TEAMSTERS UPS NATIONAL NEGOTIATING COMMITTEE,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.,**<br><br>    **Defendant.** | Civ. Action No. 1:26-cv-10666-DJC |

## DECLARATION OF MICHAEL CLAYTON

Pursuant to 28 U.S.C. § 1746, I, Michael Clayton, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts set forth in this declaration. If called to testify as a witness in this action, I could and would testify to the same facts. I am employed by United Parcel Service, Inc. ("UPS") as a Corporate Vice President, Labor Relations.

2. I submit this declaration in support of Defendant United Parcel Service, Inc.'s Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

3. UPS is a global transportation and logistics company that employs approximately 370,000 employees in the United States. Approximately 80% of UPS's U.S. employees are represented by the International Brotherhood of Teamsters ("Teamsters" or "Union").

4. In my capacity as Corporate Vice President, Labor Relations, I am familiar with the Driver Choice Program ("DCP") that is the subject of this lawsuit. The DCP was created in response to a nationwide decline in package volume and changes to UPS's delivery network. UPS faces a pressing need to reduce the number of drivers it employs because of market conditions and other factors, including significant changes to its delivery network and changes in its relationship

1

with its largest customer, Amazon. UPS's average daily package volume in the U.S. declined year-over-year by 1.6 million pieces or 8.6% in 2025. More than half of UPS's package decline was due to reductions in the package volume UPS handles for Amazon. UPS expects to reduce its Amazon volume by a similar amount in 2026.

5. At the end of 2025, UPS signed a new contract with the United States Postal Service ("USPS") through which the USPS would handle some final-mile delivery of UPS's Ground Saver packages. UPS began to ramp up its use of the USPS for Ground Saver final-mile delivery in mid-January 2026 and plans to continue in the coming months. The Ground Saver arrangement is expressly permitted under NMA Article 26, Section 4.

6. In connection with these changes, UPS anticipates needing fewer drivers in 2026 and plans to reduce its driver workforce through attrition and involuntary layoffs. In addition, UPS developed the DCP, which would reduce the need for involuntary layoffs. UPS plans to implement this program across the United States. The DCP would give drivers the opportunity to voluntarily resign in exchange for a severance payment on top of their previously earned healthcare and retirement benefits. Approximately 105,000 drivers across the U.S. would be eligible for the program. The DCP rollout and offer period were timed for February and March to provide greater clarity as to staffing levels by the second quarter of 2026, and to allow for processing of employee resignations under the program in April and operational alignments thereafter to avoid disruption prior to the summer vacation season and well in advance of the holiday-driven peak season (for which planning has already begun). UPS has already begun preparing for the DCP, including generating program material to distribute to its managers and employees.

7. UPS first notified the Union it was considering the DCP on January 8, 2026, in an in-person meeting between Teamsters International General President Sean O'Brien and UPS's President of Global Labor Relations Daniel Bordoni.

8. On January 9, 2026, Bordoni sent O'Brien an email attaching the draft materials detailing the terms of the proposed DCP. The email stated: "This program would be a significant benefit to employees who want to retire or leave and to those who remain, particularly in the current environment. Let me know if you change your mind and want to discuss. As I said, we are open to input and would prefer to develop something jointly. We would not send anything out until February 11, so there is time." The Union never responded to this invitation to bargain over the DCP. Bordoni sent O'Brien a follow-up email regarding the DCP on January 16, 2026 to clarify the proposed severance payment amount. The Union never responded to this email, either.

9. On January 30, 2026, UPS sent the Union a letter in response to the Union's January 27 letter regarding the DCP. UPS's letter explained that the DCP does not violate the NMA, responded to the Union's information requests with additional information regarding the DCP, and reminded the Union that it still intended to send the DCP materials on February 11.

10. On February 6, 2026, UPS sent the Union a letter in response to the Union's February 3 letter regarding the DCP. UPS's letter again disagreed with the Union's position that the DCP violated the NMA and explained that UPS intended to move forward with implementing the DCP on February 11.

11. The Union has not requested to bargain over the DCP. The Union's position has been that the DCP violates the NMA.

12. UPS is processing the Union's February 6, 2026 grievance consistent with the NMA grievance and arbitration procedures. UPS provided a written response to the Union's grievance on February 12, 2026.

13. The DCP is the second voluntary separation program UPS has offered to its drivers. The first program, which was called the Driver Voluntary Separation Program ("DVSP") was offered to UPS drivers in 2025. Just over three thousand drivers of the nearly one-hundred and fifteen thousand drivers who were eligible volunteered and participated in the DVSP. The Union declined to bargain with UPS about the DVSP and later took the position that it violated the NMA.

14. To participate in the DCP, eligible UPS drivers must submit an application during the election window. If UPS approves a driver's application, the driver is notified within two weeks of the election window closing (i.e., by March 27, 2026) and provided with a Separation Agreement via an online portal. UPS plans to begin voluntary separations on or about April 26, 2026.

15. Delaying the implementation of the DCP may cause UPS to rely more on attrition and involuntary layoffs. Additionally, the delay may cause employees who are interested in participating to lose their opportunity to do so. Following arbitration, the DCP may no longer be practical or relevant for UPS due to the passage of time and/or staffing reductions through other means. The DCP will benefit UPS by minimizing business disruptions and aligning UPS's driver workforce with its new delivery volume levels resulting from UPS's Amazon glide-down and recent agreement with the USPS.

16. In my role as Corporate Vice President, Labor Relations, I am responsible for overseeing the processing of contractual grievances and the Company's response. I oversee the

handling of thousands of grievances each year. From time to time, UPS takes or implements actions that the applicable Teamsters Local Union alleges to be a contract violation. In my experience, it is normal practice for an arbitrator to take remedial action to reverse the implementation if a contractual violation is found. I am not aware of any situation where UPS's implementation of actions grieved by the Union were enjoined pending arbitration.

17. Attached as **Exhibit A** is a true and correct copy of Daniel Bordoni's January 9, 2026 transmittal email to Teamsters General President Sean O'Brien concerning the DCP.

18. Attached as **Exhibit F** is a true and correct copy of *Teamsters Local 804 and UPS*, AAA Case No. 18-300-667-12 (Wittenberg, arb.; 2014).

19. Attached as **Exhibit G** is a true and correct copy of *Teamsters Local 413 and UPS*, AAA Case No. 01-16-0005-4593 (Glendon, arb.; 2017).

20. Attached as **Exhibit H** is a true and correct copy of *Teamsters Local 162 and UPS*, AAA Case No. 01-16-0002-7387 (Axon, arb.; 2017).

21. Attached as **Exhibit I** is a true and correct copy of *Teamsters Local 623 and UPS*, AAA Case No. 01-18-004-4376 (Brogan, arb.; 2019).

22. Attached as **Exhibit J** is a true and correct copy of Bordoni's January 16, 2026 email to O'Brien.

23. Attached as **Exhibit K** is a true and correct copy of UPS's January 30, 2026 letter to the Union concerning the DCP.

24. Attached as **Exhibit L** is a true and correct copy of UPS's February 6, 2026 letter to the Union concerning the DCP.

25. Attached as **Exhibit M** is a true and correct copy of UPS's February 12, 2026 response to the Union's February 6, 2026 grievance concerning the DCP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 13, 2026

_____
MICHAEL CLAYTON