# Exhibit F

```
AMERICAN ARBITRATION ASSOCIATION
Voluntary Labor Tribunal
--------------------------------------X
In the Matter of the Arbitration

        -between-                         OPINION AND AWARD

LOCAL 804, INTERNATIONAL BROTHERHOOD       18 300 667 12
OF TEAMSTERS, AFL-CIO

        -and-

UNITED PARCEL SERVICE, INC.A
--------------------------------------X
Before:  Carol Wittenberg
```

The undersigned, having been designated by the parties, pursuant to the collective bargaining agreement, was selected to serve as Arbitrator of the dispute described below. Hearings were held in New York City on February 3, 2014 and September 18, 2014. The Union was represented by Josh Pomeranz, Esquire. The Company was represented by Tony Coleman, Esquire.

The parties had a full and fair opportunity to present evidence and oral argument. The hearing was declared closed on December 5, 2014, upon receipt of the parties' post-hearing briefs.

> The issue before the Arbitrator, as framed by the Union, is:
>
> Whether the Company violated Article 6 of the National Master Agreement when the Company had employees enter

1

```
     into and sign an extra contract agreement to be paid
     less than their eight (8) hour guarantee on December
     24, 2011.  If so, what shall the remedy be?
```

RELEVANT CONTRACT LANGUAGE

NATIONAL MASTER AGREEMENT

ARTICLE 6.

Section 1.  Extra Contact Agreements

Except as may be otherwise provided in this Agreement, the Employer agrees not to enter into, or attempt to enter into, any agreement or contract with its employees, either individually or collectively, or to require or attempt to require employees to sign any document, either individually or collectively, which in any way conflicts with the provisions of this Agreement.  Any such Agreement or document shall be null and void.  Any such agreement or document may not be placed in any employee's file or used by the Employer as a basis for the discipline or used in connection with any disciplinary proceeding, nor may any such agreement or document nor the contents thereof be divulged to any person or entity.

LOCAL 804 AND UNITED PARCEL SERVICE SUPPLEMENTAL AGREEMENT

ARTICLE 3.  HOURS OF WORK, OVERTIME SUPERVISORS WORKING

Section 1 – Work Week and Overtime Pay

    (a)   The basic workweek for all regular full-time employees shall be forty (40) hours per week consisting of eight (8) hours per day, five (5) days per week….  Any employee who is assigned to full-time work shall be afforded an opportunity to earn not less than eight (8) hours of pay per day.

    (b)   The scheduled workweek of all employees engaged in Package and Central operations shall be Monday through Saturday.

ARTICLE 15.   REGULAR LIST, EXTRA LIST AND REPORT PAY

Section 1 – Regular List

Any full-time seniority employee on a weekly Regular List who is scheduled to report for work and does report will be afforded an opportunity to earn eight (8) hours pay in his-/her regular classification of work…

ARTICLE 25.   MAINTENANCE OF STANDARDS

The employer agrees that all conditions of employment relating to wages, hours of work, overtime differential, and general working conditions, as negotiated or agreed upon, shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement except as specifically provided in this Agreement, and the conditions of employment shall be improved wherever specific provisions for improvements are made elsewhere in this Agreement.

BACKGROUND

The relevant facts in this case are not in dispute. In 2011, Christmas Eve fell on Saturday, December 24th. Because the Company expected a high volume of deliveries and because most package drivers were not scheduled to work on Saturday, the Company discussed its operational needs with both Shop Stewards and drivers.

In years past, drivers wanted to be home at a reasonable time on Christmas Eve to spend time either with friends and family or to attend religious activities.  In the past, Division Managers offered employees the opportunity to work less than their guaranteed eight hours

3

and to be paid "actual only" time, an offer many drivers accepted.

On December 12, 2011 then District Manager Matt Hoffman spoke with Union President Tim Sylvester to advise him of the Company's operational plans to offer drivers the opportunity to work less than eight hours on Christmas Eve and be paid for actual hours worked.  Sylvester advised Hoffman that the Company was not permitted to force drivers to come to work on a Saturday and, if they did so, they had to pay drivers their guarantee of eight hours pay. Sylvester then held "parking lot" meetings with drivers to urge them to demand their eight-hour guarantee for work on Christmas Eve.  The Union took the position that every driver who worked on December 24, 2011 was entitled to his contractual eight-hour guarantee.

After learning of the Union's objection to allowing drivers to work less than eight hours and be paid for actual hours only, Hoffman developed a form to use to document a package driver's choice to work actual hours only.  Hoffman testified that the purpose of the form was to resolve any doubt that a driver understood that he was entitled to eight hours of work and pay, but decided to

work less than eight hours and to be paid for actual hours worked. The form read:

> "Early Departure – Saturday, December 24, 2011"
>
> "Full-time employees who work on Saturday, December 24, 2011, are entitled to an opportunity to earn 8 hours of pay. Recognizing that many employees want to leave early to get home to their families, the Company will attempt to accommodate employees who want to leave early. Employees who want to leave early and are allowed to do so will be paid for the hours worked only.
>
> If you want to leave early on December 24, sign below. If you do not sign this form, you will be given 8 hours of work. If you leave early without management permission, you will be subject to disciplinary action.
>
> \*         \*         \*         \*         \*         \*
>
> *I want to leave before the end of 8 hours of work. I understand that if I am allowed to leave early, I will be paid for hours worked only."*

Company records establish that, in Local 804's jurisdiction, 598 drivers worked less than eight hours on Saturday, December 24, 2011 and were paid for actual hours only. The remaining drivers worked eight hours and received their eight-hour guarantee. Those drivers who worked less than eight hours were designated as payroll Code 5. Two current and one former Division Directors testified that, at least over the past 25 years, UPS has used Code 5 on a daily basis, allowing driver to either report late or leave early for such issues as doctors'

5

appointments, babysitting issues, children's events and sporting events. The Division Directors also testified that Code 5 is used on a weekly basis for those who do not want to work a full day on Saturday, similar to the situation on Saturday, December 24, 2011.

A review of the Company's payroll records for 2011 shows that 3641 drivers worked on Saturdays as Code 5, 598 on Christmas Eve, December 24, 2011. Pursuant to a request from the Union, the Company provided payroll data for September 2013 to identify package drivers who worked Code 5 in that month. The data shows 856 instances when a package car driver worked as a Code 5, 14 of which were Local 804 Shop Stewards.

On December 27, 2011 the Union filed a grievance charging the Company with denying drivers their eight-hour guarantee and entering into extra contractual agreements with drivers to be paid less than their eight-hour guarantee. The grievance was heard before the National Panel on March 12, 2012. When the Panel deadlocked, the Union appealed the matter to arbitration.

6

POSITION OF THE UNION

The Union contends that the language in Article 6 is clear and unambiguous in prohibiting extra-contractual agreements that conflict with the Agreement. In this case, the Union asserts that all drivers who worked on Saturday, December 24, 2011, had a guarantee of eight hours of pay and that any violation of that eight-hour guarantee constitutes a violation of the Agreement.

The Union also asserts that the Company's payment of less than eight hours pay to drivers who worked on Christmas Eve also violates Articles 3, 15 and 25 of the Supplement. Article 3, Section 1, which refers to work week and overtime pay, defines the basic workweek of regular full-time employees as eight hours per day, five days per week. Article 15, Section 1., entitled Regular List, affords any full-time seniority employee who reports for work the "opportunity to earn eight (8) hours pay." Article 25, Maintenance of Standards, protects contractual provisions against change.

The Union contends that no practice exists. It also argues that the Company cannot have drivers opt out of the eight hour guarantee simply because drivers have occasionally done so in the past. In this regard, the

7

Union argues that lack of enforcement in the past does not negate clear contract language. The Union points out that the Company has the burden of proving there is a binding past practice, noting that it must be unequivocal, clearly enunciated, long-standing and mutual. The Union's objection to the Company's operational plans in 2011 and prior (sic) grievances show that any practice was not mutual

The Union contends that the Company made a proposal in bargaining in 2002 to pay drivers for actual hours worked and was unsuccessful. Specifically, the Union submitted a document proposing that drivers could be paid less than their eight-hour guarantee "by mutual agreement." The Union argues that an employer should not be able to obtain in arbitration that which it has been unable to obtain at the bargaining table.

The Union claims that the form the Company used was coercive and that drivers were forced to opt in. For example, the Union points out that there was no place on the form to indicate that a driver wanted to work eight hours.

In support of its position, the Union cites the arbitration decisions of Morris Glushein, Burt Turkus,

8

Robert Hoffman and Dennis Nolan. The Union argues that both the Turkus and Glushien awards stand for the proposition that it is well settled that drivers are guaranteed eight hours when they report for work. Glushien carved out an exception where circumstances beyond the Company's control, like a blackout or severe snowstorm, prevent operations, circumstances not present in this case. The Hoffman decision prohibits the Company from entering into extra contractual agreements with individual drivers.

POSITION OF THE COMPANY

The Company contends that the meaning of Article 6, Section 1 is unambiguous in prohibiting UPS from entering into any agreement with drivers "which in any way conflicts with the provisions of this Agreement." The Company points out that the plain language of Articles 5 and 15 support its interpretation of Article 6. These articles provide full-time employees with the "opportunity" to work and be paid for eight hours of work. The Company argues that an employee's approved request to work less than eight hours and be paid for less than eight hours is consistent with the language in Articles 5 and 15.

9

The Company points out that both Article 3 and 15 of the 804 Supplement were the subject of prior decision by the National Panel in October 2013 resolving seven similar cases grieved by Local 804.  In each of the seven cases, the Union argued that the Company violated Article 6 of the NMA by entering into an extra-contractual agreement with drivers who reported to work but were allowed to go home early. The Panel denied the Union's interpretation, finding that the Company's actions were not in conflict with the language in Articles 3 and 15 of the Supplement.  The Company argues that the Panel decision is final and binding on the parties.

The Company also contends that its interpretation is supported by past practice.  The Company claims that the practice in this case was unequivocal, clearly enumerated, readily ascertainable and accepted by the parties.  The Company relies on years of the use of Code 5 by full-time employees who worked less than eight hours and received actual hours paid, including on Saturdays.  And, although the Union cited two demands for arbitration submitted to AAA for resolution, the Company points out that the in those cases the Union was arguing a violation of the

10

Supplement, not Article 6 of the NMA. Furthermore, neither of the two grievances was arbitrated.

Finally, the Company claims that the Union's contention that a full-time employee cannot elect to work actual hours would lead to a harsh, absurd and nonsensical result. To interpret Article 6 as the Union urges would preclude drivers from ever coming to work late or leaving early unless the Company paid the employee for a minimum of eight hours, causing the driver to be subject to discipline for legitimate requests for time off based on personal emergencies or needs. The Company claims that many of the requests by drivers for time off are compelling and should not be denied or dealt with as a disciplinary matter.

The Company denies the Union's claim that the form it used in December 2011 was either deficient or coercive. The Company notes that an employee, by default, was entitled to eight hours of work and pay by simply not signing the form. The Company points out that the Union did not produce a single driver who claimed that he was coerced to sign or forced to waive his contractual right to eight hours of pay.

With regard to the alleged 2002 contract proposal, the Company claims that there is no basis to conclude that the

11

Company proposed the "by mutual agreement" sentence. The Company claims that the document, which presented a side-by-side proposal prepared by the Union, did not accurately represent the Company's proposal. Further, no one with the Union today was present at the 2002 negotiations and the Union was unable to produce the original Company proposal.

The Company denies that the Turkus, Glushien or Hoffman arbitration decisions deal with the situation herein. It argues that Turkus and Glushien responded to the Company not providing drivers with the "opportunity" to work. The Hoffman decision dealt with a unilateral agreement between the Company and a probationary employee. With regard to the Nolan decision, the Company notes that the arbitrator found that the Company violated the Agreement by declaring a particular day a "pay actual day." His award did not deal with a driver's right to work less than and be paid less than eight hours.

OPINION

The crux of the issue before the Arbitrator is twofold: one, whether the Company had the right to offer drivers the opportunity to work less than eight hours on Christmas Eve in 2011 and be paid less than their eight-

12

hour guarantee; and two, whether in doing so, the Company entered into an extra-contractual agreement with drivers to waive their eight-hour guarantee in violation of the National Master Agreement.  Upon careful review of the record in this case, the Arbitrator finds that the Company did not violate the Agreement by allowing drivers to work less and be paid less than their guarantee pursuant to Article 6 of the National Master Agreement ("NMA") and as set forth in Article 3 and Article 15 of the 804 Supplement.  The Arbitrator also concludes that the Company did not enter into an extra-contractual agreement in violation of Article 6 of the NMA.  My reasons follow.

Article 6 of the NMA prohibits the Company from entering into any agreement with its employees "which is any way conflicts with the provisions of this Agreement." There is no question that the Company provided drivers who were called in on Saturday, December 24, 2011 the "opportunity" to work less than their eight-hour guarantee and be paid for actual hours worked.  The question is whether this "agreement" conflicted with the provisions of the 804 Supplement that guarantees regular full-time drivers the "opportunity to earn not less than eight (8) hours of pay per day."

13

The Arbitrator finds the language in Article 3. Section 1 of the Supplement to be clear and unambiguous. It provides regular full-time employees the right to work and earn eight hours of pay per day when they report for work. Contrary to the Union's assertion, the language does not say that a regular full-time employee must be paid for eight hours simply by reporting for work. Therefore, a driver's request to work less than eight hours on any given day and to be paid for hours actually worked is not a violation of either Article 5 or Article 15 of the Supplement.

In finding that the language of Articles 3 and 15 are clear and unambiguous, the Arbitrator is precluded from considering bargaining history as a means of interpreting the language. Nevertheless, even if the Arbitrator were to consider bargaining history, it would not support the Union's interpretation of the language. This is because the record does not contain a Company proposal from 2002 to require mutual agreement to work less and be pay less than the eight-hour guarantee. The Company denies that the document submitted by the Union represents a Company bargaining proposal from 2002 and none of the current Union

14

officers was present at the table in 2002 to provide testimony concerning that bargaining round.

What is more persuasive are the decisions of the National Panel in October 2013 in deciding seven similar cases against Local 804 in which drivers who reported for work were allowed to go home early and be paid actual hours worked, cases on point with the one before me. Those cases also cited a claimed violation of Article 6, claiming the Company's actions violated Articles 3 and 15 of the 804 Supplement. The Arbitrator finds the decisions of the National Panel to be binding on the Union in this case.

Any doubt as to how the parties have interpreted the Article 3 and Article 15 language in the past is made clear by a review of the parties' practice for at least the past 25 years. During that time, thousands of full-time drivers have taken advantage of the opportunity to arrive late or leave early on both regular work days as well as Saturdays and the Company has used a Code 5 designation to denote that a driver chose to work less than eight hours on a given day and be paid for actual hours worked, less than his eight-hour guarantee. In 2011 alone, payroll records show that 3641 drivers worked on Saturdays as Code 5, 598 on Christmas Eve 2011. Further, even after the Union

objected to the practice and filed a grievance, drivers continued to work as Code 5, including some Local 804 Shop Stewards.

The extensive use by drivers of Code 5 indicates that the ability to work less than eight hours and be paid for hours worked was perceived to be a benefit by many drivers who were able to use work time to attend to important personal matters. To deny drivers the opportunity to work less than eight hours on a particular day when the driver has a compelling need for time off is harsh. Further, to force the Company to deny these legitimate requests or to deal with these issues as disciplinary matters is punitive.

Having determined that it is not a violation of the Agreement for full-time drivers to work less than eight hours and be paid for actual hours worked, the Arbitrator turns next to the issue of the form itself used by the Company on December 24, 2011. First, the Arbitrator accepts the testimony that the purpose of the form was to document a driver's choice to work actual hours only. Further, the use of the form was not unreasonable given the large number of drivers who elected to work less than eight hours, as distinguished from the few who requested Code 5 status on other days, including Saturdays.

16

Second, the Arbitrator finds no evidence that drivers were coerced to sign the forms for the following reasons: one, there was no testimony from any driver that he felt coerced to sign the form; and two, the default position where a driver did not sign was to work eight hours and be paid the contractual eight-hour guarantee.

Finally, the Union relies on four prior arbitration decisions in support of its interpretation of the language at issue. The Arbitrator has reviewed each of the decisions as described below. Both the Glushien and Turkus decisions stand for the proposition that the Company must provide drivers with the "opportunity" to work eight hours when they report for work, something not at issue here. Neither decision deals with a driver's decision, for legitimate personal reasons, to work less than eight hours and be paid for actual hours worked. The Hoffman decision is clearly inapposite as it deals with the Company entering into an "agreement" with a probationary employee to extend probation in direct violation of the Agreement.

The Nolan decision cited by the Union is instructive. In Arbitrator Nolan's case, the Company unilaterally designated a day to be a "pay actual day," something Nolan found to be a clear violation of the Agreement. In that

17

case, the Company unilaterally waived drivers' right to their eight-hour guarantee. In the case herein, December 24, 2011 was treated the same as any other Saturday by the Company, meaning that employees had the option of working eight hours or working less than eight hours and being designated as Code 5 for payroll purposes. The distinction is important because, unlike the case decided by Arbitrator Nolan, the drivers had the option to choose whether or not to work eight hours on Christmas Eve. Moreover, Nolan opined in his decision that drivers had the right to work less and be paid less than their eight-hour guarantee, a position consistent with this Arbitrator's decision herein. Specifically, Arbitrator Nolan stated that

> "...employees and their supervisors may waive the minimum hours guarantee by agreeing to pay only for hours worked. While both parties must agree, any derogation for a contractual right is a narrow exception that must stem from the employee's unfettered preference."

It is clear from the record herein that many drivers agreed to work and be paid for actual hours worked on Christmas Eve, December 24, 2011 and that they were not coerced into doing so. Accordingly, the Union's grievance is denied.

**AWARD**

The grievance is denied. The Company did not violate Article 6 of the NMA when it gave employees the option to sign a form agreeing to work less and be paid less than their eight-hour guarantee on December 24, 2011.

Dated: December 19, 2014

_____
Carol Wittenberg

STATE OF NEW YORK
                    ss:
COUNTY OF NEW YORK

I, CAROL WITTENBERG, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my award.

_12/19/14_____          _____
   (date)                              (signature)

19